JORDANA FRIEDMAN, a Minor, by Eugene Friedman, her Father and Next Friend, Plaintiff-Appellant, v. THE PARK DISTRICT OF HIGHLAND PARK, Defendant-Appellee.

Second District No. 2—85—1032

Opinion filed December 31, 1986.

376

James J. DeSanto, P.C., of Waukegan, for appellant.

Daniel P. Field, of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Jordana Friedman, a minor, by Eugene Friedman, her father and next friend, appeals from a jury verdict for the defendant, Highland Park Park District, finding no liability on the part of the defendant for plaintiff's personal injury and from the trial court's denial of plaintiff's post-trial motion for a new trial.

The incident in question occurred in February 1980 when the minor plaintiff, Jordana Friedman, was eight years old. At the time this suit was filed plaintiff was 13 years old. The plaintiff was at the top of the Manor Park sledding hill, owned and maintained by the Highland Park Park District, preparing to sled down the hill. She was seated on the front of the sled with her feet placed in front of her on the sled's frame. The plaintiff's sister, Fraeda, 10 years old at the time the incident occurred, positioned herself in a seated posture on the sled behind the plaintiff with her legs on either side of the plaintiff. Fraeda's feet were placed forward on the wooden steering mechanism of the sled.

It is not clear how they began their descent, but the sled angled across the hill in approximately a 45-degree deviation from a straight descent, heading toward the snow fence on the right side of the hill (south side) as one looks down the hill from the crest. The sled proceeded into the snow fence at the precise point where one of a series of metal fence support poles, securely driven into the ground, was placed. Plaintiff's position on the sled in relation to this pole was such that upon the sled impacting with the pole, plaintiff was thrown forward with her legs on either side of the pole. As a result of the impact, plaintiff suffered serious injury.

At trial, testimony was introduced regarding the maintenance of this hill as a sledding facility. Marco Santi, an employee of the park district since 1976, was the maintenance foreman at the park since 1980. He stated there were two maintenance crews at the Highland Park Park District. His crew was responsible for the sledding hill the year prior to the year that the instant injury took place. The year of the accident at issue here, the other maintenance crew (the golf course crew) maintained the hill. Mr. Santi's crew is separate from the golf course maintenance crew. Santi testified to the procedure he followed in setting up the hill the year before the golf course crew assumed those duties.

The procedure Santi implemented was to erect a snow fence on both sides of the hill and secure it to a series of 6-foot metal posts each driven 2 feet into the ground. Santi stated he placed bales of hay along the inside of the snow fence and inspected the condition of the

bales each week, replacing damaged bales. Santi testified that the fence was put up for directional purposes; the hay bales were to prevent children from going into the woods for Santi did not consider the fence strong enough to stop a sled. Both parties stipulated to the cost of $2.50 for a bale of hay. It is not clear how many were used.

Santi related that prior to the first and only year (1979) that he maintained the hill, he was not aware of any fences or hay bales being placed on the Manor Park hill. Further, there was no written policy on how to prepare the slope.

Constance Skibbe also testified regarding certain aspects of the hill and its maintenance. At the time of plaintiff's injury, Skibbe was superintendent of recreation of the Highland Park Park District, but it was pointed out by both parties that Mr. Earl Hodgen was responsible for the park's sledding facilities and instruction of park personnel at those facilities. Hodgen did not testify.

Skibbe stated that she didn't know if the Manor Park sledding hill was specifically designed for sledding purposes or whether it was simply a natural part of the park's terrain. She testified that for the 12 years she had worked at the park, this particular hill was used for sledding with snow fences and hay bales installed along the sides supplied as a regular practice. However, when reminded of Santi's testimony, she confessed she was not certain that such fences and hay were utilized on the hill prior to 1978. Skibbe explained that no written policy regarding maintenance of sledding hills had been produced. She added that it was her belief that bales of hay were placed on both sides of this hill each year.

When asked on cross-examination whether, if given the opportunity, she would have ordered hay bales placed on the right side (south side) of the hill, she answered that she may not have for two reasons. First, the south side of the hill is sloped in an uphill curve, is slightly higher than the north side, and gravity would serve to slow the progress of any sled proceeding to the south side of the hill. Further, Skibbe declared that the hay bales had a tendency to freeze after absorbing a certain amount of moisture and in themselves become a source of injury when sledders ran into them.

Skibbe acknowledged that children sit on sleds in various ways with varying degrees of control over the direction of their sled. She stated that she knew steel posts were used to secure the snow fences but that the fence was clearly visible to all those who used the hill for sledding and that a sign was posted clearly indicating that sledding on that hill was unsupervised.

Although never having designed a sledding hill herself, she said

she was familiar with nearly 50 sledding hills in the Chicago metropolitan area maintained by municipal park bodies. Skibbe noted that she had never seen a hill designed with a "funneling" effect to naturally direct sleds straight down the hill. She added there was no established practice in the park management field governing the use of fencing alongside sledding hills; some municipalities employed them, others did not. She was not familiar with any other park district that lined the fences with hay bales.

Plaintiff's expert, Dr. Alan Caskey, worked for some 14 years as a private consultant in the design and development of parks and recreational facilities. He had numerous criticisms of this sledding hill, only a few of which were relevant to the injury incurred by plaintiff.

Dr. Caskey felt the topography of the hill, *i.e.*, undulations in the surface, and the lack of a distinct trough to channel sleds straight down the hill, could cause sleds and saucers to travel in various directions on the hill. Such a problem would increase the possibility of a sled or saucer impacting the fence on the south side of the hill. He stated that the type of sled used by plaintiff could be turned only in a wide arc and that plaintiff, as an eight-year-old, would have difficulty effecting a turn on the sled. He hypothesized that the cause of the plaintiff's injury was the lack of a protective cushion between sledders and the fence and, additionally, the topography of the hill. It was his opinion that a reasonably well-qualified park recreational supervisor would have the knowledge and skill to foresee the hazards extant on the hill when the injury occurred.

Dr. Caskey based his conclusions upon photographs, depositions, interrogatories, and a 30- to 45-minute visual inspection of the hill a week before the trial. He never viewed the hill when covered with snow or while being used by sledders. Dr. Caskey explained that there are no national standards for the design of sledding hills or the erection of protective barriers on the sides of such hills. In his field of expertise, hazard analysis, Dr. Caskey emphasized that "you try to remove the hazard completely; if, because of the design you cannot remove the hazard and you have to barricade it or pad it, you make sure the pad is sufficient."

Finally, testimony as to the condition of the hill and circumstances surrounding the injury on the date thereof was adduced from two of plaintiff's siblings who witnessed the accident.

Plaintiff's brother, Arie, confirmed there were snow fences on both sides of the hill, only the north side of which was lined with hay bales. He estimated that 10 or 15 other children were also sledding at the time of the accident. He did not specifically remember if it had

been he or his brother that had pushed the plaintiff's sled to start it down the hill but he recalled that the sled immediately started down the hill at a 45-degree angle toward the south snow fence, striking the fence 20 to 30 feet down the hill. It was Arie's understanding that the sled could be steered to a minor degree.

Plaintiff's sister, Fraeda, who accompanied plaintiff on the ride that resulted in plaintiff's injury, stated that although her feet were on the steering mechanism, she did not know how to steer. In fact, she said she had never been down a hill before and had no idea how to control the sled. She continued that she was aware of the location of the fence and that nothing obscured her view of it. To begin their run down the hill, Fraeda felt she and plaintiff had shoved off themselves or had been pushed. She wasn't certain if there had been a sign posted indicating the hill was unsupervised.

The plaintiff also stated she did not know how to steer the sled. Plaintiff admitted she had used the sled many times prior to her injury and had been on Manor Park hill sledding once or twice previously. Plaintiff stated the fence was plainly visible prior to her injury. She did not think that the hill itself caused her to veer toward the fence, nor did the sled strike any object or bump that caused a change of direction. Plaintiff recalls no park district personnel supervising the hill. She realized her sister did not know how to steer a sled.

The plaintiff contends on review: (1) the jury's verdict was contrary to the manifest weight of the evidence; (2) the trial court erred by denying the plaintiff's motion for directed verdict and her motion for a new trial; (3) the trial court erred in limiting cross-examination of the defendant's expert witness; (4) the court erroneously instructed the jury; (5) the trial court erred in partially granting a directed verdict for the defendant; and (6) the trial court erred by refusing to allow plaintiff's expert to observe the trial prior to his testimony.

Plaintiff initially claims that the jury verdict for the defendant was against the manifest weight of the evidence. However, she includes several issues unrelated to this contention. Plaintiff argues that the following question by defense counsel to a prospective juror on *voir dire* regarding an incident in the juror's past, in the presence of other jurors, served to improperly lead and indoctrinate the jury to favor the defendant:

"Do you think your striking the curb was the fault of the City of Dubuque or did your own lack of care have something to do with it?"

This inquiry was in regard to a previous sledding accident involving the juror being questioned.

■■■ In determining what is appropriate questioning on *voir dire*, the trial court must balance the need to probe potential prejudices of jurors while avoiding attempts to indoctrinate or influence the jury. (*People v. Muhammad* (1985), 132 Ill. App. 3d 901.) Sufficient, appropriate questions should be asked of jurors to uncover any otherwise concealed bias or prejudice. (*People v. Newlun* (1980), 89 Ill. App. 3d 938.) The questions to be posed to the jurors are within the discretion of the trial court. (*People v. Chamness* (1984), 129 Ill. App. 3d 871; *People v. Kendricks* (1984), 121 Ill. App. 3d 442.) An abuse of discretion can be established where the trial court refused certain supplemental questions by counsel which directly impact on a specific bias or prejudice. (See, *e.g.*, *People v. Zehr* (1982), 110 Ill. App. 3d 458, *aff'd* (1984), 103 Ill. 2d 472.) In the instant case, the previous involvement of a potential juror in a sledding accident would serve as a key area for scrutiny by both parties regarding possible preconceptions of that juror. The standard for evaluating whether the trial court has abused its discretion in the questioning of jurors is whether the inquiry creates a reasonable assurance that prejudice would be discovered if present. (*People v. Pope* (1985), 138 Ill. App. 3d 726.) The question posed here was proper when measured by this standard. Further, the determination of whether or not a juror is qualified lies with the trial court and must be made on the evidence, not on a mere suspicion of undue influence. (*People v. Cole* (1973), 54 Ill. 2d 401.) Here plaintiff must show actual and substantial prejudice by the jury based upon this question. (*People v. Beacham* (1980), 87 Ill. App. 3d 457.) Plaintiff has not met this burden, merely alleging improper indoctrination of the jury.

In an analogous case, it was held that there was nothing improper about asking a juror who had previously had a personal injury claim and had chosen to settle it, whether she would be influenced by the fact that the current case had not been settled. (See *Cummings v. Chicago Transit Authority* (1980), 86 Ill. App. 3d 914.) The court emphasized that the question did not connote or indoctrinate the panel of jurors to believe the defendant was guilty, adding that either party was entitled to expose any hidden bias or prejudice of a prospective juror. The only case cited by plaintiff in support of his argument, *Tripp v. Bureau Service Co.* (1978), 62 Ill. App. 3d 998, deals with the allowance of testimony of similar occurrences *at trial* and the court's decision there did not involve the questioning of a jury but rather the admissibility of hearsay evidence of similar occurrences. We find that the question of defense counsel here appropriately addressed a latent bias and the trial court acted within its discretion to allow it.

■ Plaintiff next challenges the testimonial evidence introduced at trial by Constance Skibbe of injuries to sledders when they collided with frozen bales of hay. The defendant points out that the plaintiff "opened the door" regarding this line of inquiry herself when plaintiff asked Ms. Skibbe if she would have placed bales of hay along the fence if it were her responsibility to maintain the hill. She responded that she would not necessarily do it, in part, because there are problems in using hay bales at times. One of the problems, elicited by defense counsel, was that the bales froze and caused injury. Further, plaintiff did not object to the testimony when it was presented and in actuality, later questioned the witness regarding that line of inquiry. The general rule is that failure to object to certain testimony at the time it is presented waives the objection for purposes of review. (See, e.g., *Zelinski v. Security Lumber Co.* (1985), 133 Ill. App. 3d 927; *Gabrenas v. R. D. Werner Co.* (1983), 116 Ill. App. 3d 276.) Given the scope and nature of plaintiff's questioning regarding this issue, we find no reason to ignore the waiver rule here. We find that plaintiff has waived the issue by failing to object at trial.

In relation to her argument that the jury verdict was contrary to the manifest weight of the evidence, plaintiff cites the evidence she presented, *i.e.*, defendant placed the metal post in the ground, was fully aware of the use of snow bales to keep sledders from going into the woods, and the park district believed that hay bales were on the south side of the hill on the date of plaintiff's injury. Plaintiff alleges that the defendant's only refutation of its alleged breach of duty owed the plaintiff was testimony that the hay bales did not constitute a buffer, but rather, when frozen, they were a dangerous condition. However, the defendant does rely upon other evidence, most notably that of plaintiff's lack of due care, to establish that defendant was not culpable.

The defendant notes that the plaintiff was familiar with the hill, having sledded on it on previous occasions and several times on the day of the injury prior to striking the post. Plaintiff testified she knew of the fence, that it was clearly visible, and she made no attempt to avoid it. Several witnesses stated it was clear there were no bales of hay lining the snow fence on the hill's south side. These witnesses also stated that the sled was pushed off the top of the hill at a 45-degree angle, heading toward the fence. Plaintiff admitted that nothing in the slope or surface of the hill caused her to angle toward the fence, and that neither she nor her sister knew how to steer the sled. Plaintiff's expert testified that even with a properly constructed hill without excessive undulations, a sled pushed at a 45-degree angle

would possibly proceed into the fence. Defendant introduced evidence from which the jury could infer that it was clear to sledders that the hill was unsupervised by park district personnel.

Questions of a persons's due care, another party's alleged negligence, and proximate cause are "preeminently" questions for the jury. *(Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 623; *La Salle National Bank v. City of Chicago* (1985), 132 Ill. App. 3d 607; *Riley v. Johnson* (1981), 98 Ill. App. 688.) Jury determinations can be set aside on review only when the reviewing court is clearly satisfied that the verdict was occasioned by passion or prejudice or found to be wholly unwarranted from the manifest weight of the evidence. *(Wright v. Yellow Cab Co.* (1983), 116 Ill. App. 3d 242; *Riley v. Johnson* (1981), 98 Ill. App. 688.) Since *Kahn*, the liability of an owner or party in control of certain property upon which a child is injured has been determined with reference to customary rules of negligence. *(Whitcanock v. Nelson* (1980), 81 Ill. App. 3d 186; *Warchol v. City of Chicago* (1979), 75 Ill. App. 3d 289.) The common law categories of trespasser, licensee, and invitee as labels for children injured on the premises of another are obviated by the holding in *Kahn* and the standard for determining liability is foreseeability of harm to children. *(Cope v. Doe* (1984), 102 Ill. 2d 278; *Cocoran v. Village of Libertyville* (1978), 73 Ill. 2d 316.) A dangerous condition will be said to exist where it is one likely to cause injury to a general class of children who, by reason of their immaturity, might be incapable of appreciating the risk. *(Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316; *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614.) However, this rule does not impose a *per se* duty upon all owners or parties in possession to correct all conditions on their land for it is well settled that if the potentially dangerous condition presents *obvious* risks which children would be expected to appreciate and avoid, no duty arises to remedy the condition. *(Cope v. Doe* (1984), 102 Ill. 2d 278; *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316.) This rule obtains even if an owner knows, as the park district did here, that children frequent the premises. The duty that is owed is to keep the premises reasonably safe and to warn of dangerous, nonobvious conditions. *(Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316.) The supreme court in *Corcoran* reasoned:

> "It is always unfortunate when a child gets injured while playing, but a person who is merely in possession and control of the property cannot be required to indemnify against every possibility of injury thereon. The responsibility for a child's safety lies primarily with its parents, whose duty it is to see that his

behavior does not involve danger to himself." *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 327, citing *Driscoll v. Rasmussen Corp.* (1966), 35 Ill. 2d 74, 79.

■ The issues of the plaintiff's due care, the defendant's alleged negligence, and the proximate cause of the accident were properly the province of the jury in the present case. There was substantial support in the record for the jury to find for defendant given the facts surrounding plaintiff's prior knowledge or her equipment, the hill, the patent nature of the fence, the angle of descent, and the lack of supervision. If a hazard is obvious, children are expected to avoid it and therefore no reasonably foreseeable risk of harm accrues to the defendant. (See, *e.g.*, *Mort v. Walter* (1983), 98 Ill. 2d 391, 398 (" '[O]ne cannot look with unseeing eye and not see the danger which he could have seen by the proper exercise of his sight ***' ").) We do not find the jury's verdict to be contrary to the manifest weight of the evidence.

Given our conclusion on this issue, we find it unnecessary to examine the plaintiff's claim of error based on the trial court's denial of both her motions for a directed verdict and for a new trial. The standard of review of a trial court's denial of a motion for a new trial is whether the jury's verdict was against the manifest weight of the evidence. (*Ciborowski v. Philip Dressler & Associates* (1982), 110 Ill. App. 3d 981.) This standard is identical to that which we considered in reviewing the jury's finding for defendant. Since we hold the verdict was not contrary to the manifest weight of the evidence, then it follows that it was not error for the trial court to deny plaintiff's motion for a directed verdict, for plaintiff's burden to succeed on such a motion is even greater than it was with plaintiff's motion for a new trial. The supreme court in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494 asserted, "we believe a more nearly conclusive evidentiary situation ought to be required before a verdict is directed than is necessary to justify a new trial." 37 Ill. 2d 494, 509-10; see also *Hollembaek v. Dominick's Finer Foods, Inc.* (1985), 137 Ill. App. 3d 773.

In her reply brief, plaintiff states that the trial court erred in not allowing plaintiff sufficient latitude to cross-examine Constance Skibbe for impeachment purposes. Plaintiff claims that the trial court specifically ruled that plaintiff be precluded from questioning as to "these interrogatories," apparently meaning the interrogatories of the park district. But, from our reading of the record, plaintiff's counsel sought to introduce a contradictory statement from Constance Skibbe's interrogatories after Skibbe conceded the fact there were no

hay bales on the south side of the hill, both on the witness stand and in the defendant's pleadings. The trial court held that plaintiff's counsel could not continue "[o]n this point impeaching something which is already admitted."

Plaintiff contends the impeachment should have been allowed in order for him to discredit the testimony of the witness. Such inquiry will be permitted if the consistency has a reasonable tendency to discredit the testimony of the witness. (*People v. Davis* (1982), 106 Ill. App. 3d 260.) Here, however, Skibbe provided plaintiff's counsel the answer he sought in conceding a key element upon which plaintiff relies to build her case for a finding of negligence. Once admitted, any contradictory statement in the interrogatories becomes patently immaterial and, therefore, collateral to the issues in this case. The determination to allow or deny impeachment is within the discretion of the trial court (*People v. Nowak* (1979), 76 Ill. App. 3d 472; *O'Brien v. Walker* (1977), 49 Ill. App. 3d 940), and here the trial court did not abuse that discretion.

Plaintiff next argues the trial court erred in granting a partial directed verdict for defendant on the issues of lack of warning and supervision as bases for asserting negligence on the part of defendant. The only evidence plaintiff relies upon here is the possible inferences to be drawn from Dr. Caskey's testimony regarding the topography of the hill, or alternatively plaintiff argues that no issue of fact existed since defendant never established there were any warnings posted. Plaintiff misstates the facts elicited at trial and the burden of proof in this regard.

The defendant introduced testimony that a sign was posted on the hill indicating that the hill was unsupervised. The burden rests with plaintiff to set forth the evidence to establish her contentions. Here, there was no testimony regarding warnings, outside of defendant's assertion that signs reading the hill was unsupervised were posted, nor did plaintiff's expert address the role that lack of warnings or supervision might have played in the injury that occurred to plaintiff. Further, we find that the risk that children will drastically deviate from the path properly provided for sledding is not an "unreasonable risk" so as to produce a duty requiring the defendant to guard or supervise the hill or to warn plaintiff against its use. Where defendant here established that plaintiff and users of the hill in general could clearly see and were aware of the fence and the absence of hay bales, no duty to warn of a danger not known (see, *e.g.*, *Geraghty v. Burr Oak Lanes, Inc.* (1955), 5 Ill. 2d 153; *Allgauer v. Le Bastille, Inc.* (1981), 101 Ill. App. 3d 978; *Latimer v. Latimer* (1978), 66 Ill.

App. 3d 685), or readily apparent to the users of the hill, could be said to exist. As such, and lacking any evidence produced by plaintiff to establish a duty to warn or supervise, the trial court's directed verdict for defendant on these issues was not an abuse of discretion.

■■■ Plaintiff also challenges alleged errors in the instructions tendered to the jury. Although plaintiff contends the court improperly failed to include an instruction regarding lack of warning and supervision, our previous treatment of this issue serves to dispose of this contention. Additionally, plaintiff asserts error in the failure to instruct the jury fully if the liability standard for a possessor of land, *i.e.*, that an unreasonably dangerous condition exists on the property, *and* the duty to remedy the condition of the cost of repair is slight compared to the risk. Plaintiff's argument fails for two reasons. First, we find no evidence in the record to rebut defendant's claim that plaintiff submitted no instruction on this issue, and by virtue of such failure, the issue has been waived. (See, *e.g.*, *La Salle National Bank v. City of Chicago* (1985), 132 Ill. App. 3d 607; *Biundo v. Christ Community Hospital* (1982), 104 Ill. App. 3d 670.) Secondly, no prejudice would result to the plaintiff from the failure to give this instruction when the jury found for the defendant. Rather, it is the defendant, if the verdict would have gone against it, who could attempt to escape liability by relying upon an argument that the cost of repair would be onerous to remedy a given dangerous condition. Given that the jury found for the defendant regarding the existence or nonexistence of a reasonably foreseeable dangerous condition, the cost factors to remedy such "condition" became immaterial.

■■■ Plaintiff's objection to defendant's tendered jury instruction on plaintiff's burden of proof is that it created new issues for the plaintiff, going beyond the landowner's duty of reasonable care. Defendant's instruction dictated that the plaintiff must prove that the defendant knew of the condition of the hill, realized that it presented an unreasonable risk to the plaintiff, and should have expected that the plaintiff would not have appreciated the dangers or would fail to protect herself against it. Supreme Court Rule 341 (103 Ill. 2d R. 341) sets forth the responsibilities of counsel in presenting a proper appeal to this court. That rule requires, in part, that the appellant's argument shall contain not only the contentions of the plaintiff but the reasons for such contentions *with supporting authority*. (103 Ill. 2d R. 341(e)(7).) Plaintiff here makes a bald assertion that this instruction is erroneous. We find the instruction to be consistent with the applicable law in this area, and absent authority to the contrary, find plaintiff's argument to be without merit.

●14 Plaintiff sought and was refused the tender of an instruction to the jury regarding the common law presumption of freedom from negligence for a child who is under 14 years of age. In arguing for its inclusion before this court, plaintiff relies solely upon the case of *Diederich v. Walters* (1976), 65 Ill. 2d 95; however, it is clear that under the circumstances of this case, *Diederich* does not mandate that such an instruction be given.

In *Diederich*, the court stated:

"The determination of whether a jury should be instructed as to the existence of a presumption must be made by the trial court in the context of the facts and circumstances of each case *** ." (*Diederich v. Walters* (1976), 65 Ill. 2d 95, 100.)

However, the presumption ceases to operate when evidence is introduced against it. (*Diederich v. Walters* (1976), 65 Ill. 2d 95; *Pellegrini v. Chicago Rock Island & Pacific R.R. Co.* (1980), 91 Ill. App. 3d 1091.) Only where there is no evidence that the plaintiff failed to exercise that degree of care which a reasonably careful minor of the same age, mental capacity, and experience would exercise under the circumstances is the presumption operable. (*Diederich v. Walters* (1976), 65 Ill. 2d 95.) The instruction that is given by the trial court is justified if it is supported by some evidence in the record, and the trial court has discretion in deciding which issues are raised by the evidence. (*Ralston v. Plogger* (1985), 132 Ill. App. 3d 90; *Burge v. Morton* (1981), 99 Ill. App. 3d 266.) The trial court acted well within its discretion in determining which instruction regarding a minor's duty of care to use, but not to tender the instruction proffered by plaintiff here.

 Further, plaintiff urges that the use of instruction No. A45.06 of the Illinois Pattern Jury Instructions (Illinois Pattern Jury Instruction, Civil, No. A45.06 (2d ed. Supp. 1981)) (hereinafter IPI Civil 2d) without Illinois Pattern Jury Instruction, Civil, No. A45.05 (IPI Civil 2d No. A45.05)) could have led to the misunderstanding by the jury that if plaintiff was at fault to any degree, the defendant would be absolved from any liability. A litigant has the right to have submitted to the jury instructions which inform the jury of the issues presented, the legal principles to be applied, and the facts that must be proved to support a verdict. (*Korpalski v. Lyman* (1983), 114 Ill. App. 3d 563; *Winston v. Chicago Transit Authority* (1971), 2 Ill. App. 3d 151.) The test is whether, taken as a whole, the instructions are clear enough so as not to mislead and whether they fairly and accurately state the applicable law. *Ralston v. Plogger* (1985), 132 Ill. App. 3d 90; *Cole v. Brundage* (1976), 36 Ill. App. 3d 782.

 Since plaintiff's only concern with the giving of instruction

No. A45.06 without instruction No. A45.05 is that the jury may feel any contributory negligence by plaintiff precludes any recovery, we find that the wording of IPI Civil 2d No. A45.06 is sufficient to prevent that possibility. IPI Civil 2d No. A45.06 includes no less than four explicit references to the combined negligence of the plaintiff and defendant, and the appropriate assessment of damages when both are found to be negligent. One court has held that it is within the competence of ordinary men and women to be able to comprehend the concept of contributory negligence when provided with the basic precepts. (*Feigl v. Terminal R.R. Association* (1975), 30 Ill. App. 3d 55.) The pattern jury instruction No. 11.01 (IPI Civil 2d No. 11.01) on contributory negligence was given, in addition to IPI Civil 2d No. 10.01 on negligence, IPI Civil 2d No.15.01 on proximate cause, IPI Civil 2d No. 10.05 regarding the standard of care for a minor, and IPI Civil 2d No. 45.01 which includes references to percentages of negligence. In analyzing instructions, they are to be read as a series and considered *in toto*. (*Ruggiero v. Public Taxi Service, Inc.* (1973), 16 Ill. App. 3d 754.) A deficiency in one instruction may be cured by another. (*Nowak v. Witt* (1957), 14 Ill. App. 2d 482.) The instructions in this case, when viewed in their entirety, adequately apprise the jury of the law of this case and do not appear to lead the ordinary juror to believe any fault by plaintiff eliminates any recovery. Even if the court erroneously refused an instruction, reversal for a new trial is required only where plaintiff has been prejudiced thereby. (*Korpalski v. Lyman* (1983), 114 Ill. App. 3d 563; *Goodrick v. Bassick Co.* (1978), 58 Ill. App. 3d 447.) As stated, the instructions read together provide sufficient explanation of proximate cause and contributory negligence without prejudice to the plaintiff.

 Finally, plaintiff believes the court's presentation to the jury of IPI Civil 2d No. 20.01 with evidence of plaintiff's contributory negligence therein was in error. IPI Civil 2d No. 20.01 allows for a simple statement, in the court's own words, of the allegations regarding negligence and contributory negligence. This is a pattern jury instruction, and Supreme Court Rule 239(a) (87 Ill. 2d R. 239(a)) requires the use of Illinois Pattern Jury Instructions unless those pattern charges do not state the law accurately or they omit an instruction on a subject which the court determines should be instructed on. (*Lay v. Knapp* (1981), 93 Ill. App. 3d 855.) Plaintiff does not point out any specific wording that has no basis in the evidence or manner of phraseology that acts to mislead or prejudice the jury.

 ██ It is established that the defendant in this case has a right to have the jury instructed as to the theory of its case, and the

question as to what issues have been raised by the evidence is within the discretion of the trial court. (*Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078; *Willhite v. Goodman* (1978), 64 Ill. App. 3d 273.) Considerable discretion is granted the trial court in determining the form in which an instruction shall be given. (*Ralston v. Plogger* (1985), 132 Ill. App. 3d 90.) An instruction can be given if supported by some evidence, and the trial court decides which issues are raised by the evidence. *Ralston v. Plogger* (1985), 132 Ill. App. 3d 90; *Burge v. Morton* (1981), 99 Ill. App. 3d 266.

A reading of the instruction as tendered by the trial court reveals no ambiguities or misleading representations, nor does plaintiff specify any, and we therefore conclude the trial court acted within its discretion.

■■ The last issue to be raised by plaintiff is that plaintiff's expert was improperly excluded from the courtroom and not allowed to observe witnesses or hear testimony. Plaintiff relies upon *Wilson v. Clark* (1981), 84 Ill. 2d 186, to establish the adoption in Illinois of Federal Rule 703 (Fed. R. Evid. 703) which lends support to the right of an expert to be present during testimony of other witnesses. The purpose of the sequestration rule is to prevent the shaping of testimony by one witness to match that of another and discourage fabrication. (*Miller v. Universal City Studios, Inc.* (5th Cir. 1981), 650 F.2d 1365; see Fed. R. Evid. 615.) However, Rule 703 does *not* furnish an automatic basis for exempting an expert from sequestration pursuant to Rule 615. (*Miller v. Universal Studios, Inc.* (5th Cir. 1981), 650 F.2d 1365.) The enforcement of a rule to exclude witnesses, made at the outset of a trial, is within the trial court's discretion. *Gatto v. Curtis* (1972), 6 Ill. App. 3d 714.

■ Here, the trial court acted within its discretion when it chose to enforce the order because plaintiff's expert proposed to join the proceedings to observe part of the testimony of one witness, numerous witnesses having already testified. The trial court permissibly determined that the presence of the expert for such an abbreviated portion of the trial would likely be more harmful and serve to distort the proceedings for the expert and therefore excluded the expert. No prejudice has been shown by plaintiff to have resulted from such action.

For the reasons cited herein, we affirm the decision of the trial court in this matter.

Affirmed.

UNVERZAGT and REINHARD, JJ., concur.