24 June 1999

NO. 5-97-0419

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_______________________________________________________________

IRENE HERNANDEZ,            )  Appeal from the

                            )  Circuit Court of

     Plaintiff-Appellant,   )  Jefferson County.

                            )

v.                          )  No. 93-L-90

                            )

ANTON SCHITTEK, M.D.,       )  Honorable

                            )  James M. Wexstten,

     Defendant-Appellee.    )  Judge, presiding.

_______________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

Following a jury verdict in favor of Anton Schittek, M.D., in this medical malpractice case, and the trial court's denial of her posttrial motion, Irene Hernandez appeals.  We reverse and remand.

This case began when Hernandez's primary care physician, Dr. Evelyn Yu, found a lump in her left breast.  Dr. Yu ordered a mammogram, which confirmed the presence of the lump and fixed its location in the upper, outer quadrant of the breast.  The radiology report indicated that the lump was highly suspicious, requiring "excisional biopsy."  Dr. Yu then referred Hernandez to a general surgeon, Dr. Schittek.

Dr. Schittek examined Hernandez's breast and reviewed the mammogram films.  Based upon his examination and records review, Dr. Schittek recommended that Hernandez undergo a frozen section biopsy of the lump.  In a frozen section biopsy, a portion of the lump is removed.  While the patient remains anesthetized, a pathologist microscopically examines the frozen tissue sample.  In Hernandez's case, if the pathologist found the presence of cancer within the frozen tissue sample, Dr. Schittek recommended the removal of the upper, outer quarter of the left breast--a procedure known as a quadrantectomy, as well as the removal of certain lymph nodes.  If the pathologist did not detect cancer in the frozen tissue sample, then Dr. Schittek only planned to excise the lump.  At trial, Dr. Schittek confirmed that there had not been any discussion about what would occur in the event that the frozen section report was inconclusive.

Surgery was scheduled for February 8, 1993.  On that date, Hernandez signed a standard consent form for Dr. Schittek's proposed surgical procedures.  The form was filled out and witnessed by a registered nurse based upon Dr. Schittek's admission orders.  The language of the consent form follows:

"I, the undersigned, authorize Dr. Schittek *** to perform the following operation[--]Left Breast Biopsy, Possible Quadrantectomy and axillary node dissection[--]on Sylvia Hernandez and such additional operations as are considered therapeutically necessary on the basis of findings during the course of said operation."

Hernandez believed that the quadrantectomy would only be performed in the event of cancer.

During surgery, Dr. Schittek made the initial incision and located the lump.  The lump was smaller than it appeared on the mammogram.  Dr. Schittek removed three lump fragments, which were immediately sent to the pathologist, Dr. Victor Aydt, for frozen section microscopic examination.  Dr. Schittek closed the wound with sutures.  Dr. Aydt was unable to form any conclusive opinions with the samples provided.  He indicated that additional lump tissue could be beneficial in reaching a diagnosis.  Dr. Aydt did suspect that the lump was malignant.  Dr. Aydt then deferred his diagnosis until a permanent section of biopsied tissue could be performed, as the diagnostic quality improves with a permanent section.

Whether or not Dr. Schittek personally brought Dr. Aydt another small sample with which Dr. Aydt was still unable to make a definitive diagnosis is in dispute.  Dr. Schittek testified that he left the operation and went to the laboratory with another sample for Dr. Aydt to analyze.  This second sample is not detailed in Dr. Schittek's operative report, dictated on the date of the operation.  Furthermore, Dr. Aydt did not testify to a personal visit from Dr. Schittek.  What is known is that Dr. Aydt felt that an additional tissue sample could help him in reaching a preliminary diagnosis.

After informing Hernandez's sister that the pathologist could not reach a definitive conclusion with the sample obtained, Dr. Schittek returned to surgery and performed the quadrantectomy.  He elongated or continued the previous incision and actually encompassed the first incision, removing approximately one-third of Hernandez's breast.  Dr. Schittek testified that he took so much tissue in an effort to avoid the possibility of repeat surgery in the event of a proven malignancy.  He did not remove any lymph nodes, as had been his plan in the case of a malignancy.  This tissue was submitted to Dr. Aydt for additional testing.  Dr. Aydt was surprised with the size of this sample.  Dr. Schittek requested additional frozen section examinations, which Dr. Aydt performed.  He reported fibrous, cystic, and inflammatory changes pending permanent sections.  Again, Dr. Aydt did not want to conclusively rule a malignancy in or out on the basis of the samples examined.  Some tissue was preserved and sent to a laboratory for further testing.

After surgery, Dr. Schittek spoke with Hernandez's family.  Hernandez's sister reports that Dr. Schittek advised that the tissue samples were inconclusive and that he 
knew
 that the lump was cancerous and that the testing would bear his feelings out.  He also apologized to the family, stating that they might be mad at him as he opted to perform the quadrantectomy.

Following Hernandez’s discharge from the hospital, the laboratory performed the permanent section analysis recommended by Dr. Aydt. The laboratory report, dated February 11, 1993, verified that the mass was benign and specifically stated:  "radial scar, florid ductal hyperplasia without atypia and sclerosing adenosis."  Dr. Aydt testified that under a microscope, these conditions mimic malignancy and are very difficult to interpret microscopically.

Dr. Schittek called Hernandez at home to advise her that the report indicated that the lump was not cancerous.  Thereafter, Hernandez followed up with Dr. Schittek in his office to have a surgical drain removed.  Hernandez claims that Dr. Schittek apologized for disfiguring her, while Dr. Schittek denies having made this statement.

There really is no dispute that the surgery has left Hernandez with some disfigurement and disability.  The incision stretched from her nipple to under the armpit, causing the nipple to turn outward and leaving a cavity in the area from which the tissue was removed.  Additionally, Hernandez experiences a pulling sensation every time she raises her arm.

Hernandez filed suit against Dr. Schittek.  Her first amended complaint was in two counts.  Count I made standard medical negligence allegations, while count II alleged surgical battery in that Dr. Schittek exceeded Hernandez's consent in performing the quadrantectomy before determining that the lump was cancerous.

At trial, each party's expert witness testified.  Both experts were board-certified surgeons.  Neither provided opinion testimony with respect to the battery claim or regarding the scope and nature of Hernandez's consent to the quadrantectomy.  Hernandez's expert, Dr. Marsha Ryan, testified that Dr. Schittek deviated from the accepted surgical standard of care by performing the quadrantectomy prior to obtaining a definitive pathology diagnosis.  Dr. Ryan testified that 80% of all biopsies in this nation are performed with permanent sections and that the few extra days it takes to receive a definitive diagnosis are not detrimental to the patient.  Furthermore, even if Hernandez's lump proved to be malignant, Dr. Schittek would still have had to perform an additional surgery to remove the lymph nodes that were not removed during the quadrantectomy.  Dr. Ryan concluded that Hernandez had been damaged and that the cosmetic defect would have been minimal if he had simply performed the biopsy taking only an amount necessary for a permanent section.

Dr. Schittek's expert, Dr. Earle E. Peacock, Jr., testified that he believed that Dr. Schittek made only one incision during the surgery and that additional incisions would have been inappropriate.  Dr. Peacock testified that in his medical opinion, Dr. Schittek had no choice but to remove additional tissue when informed by Dr. Aydt that the test upon the original tissue sample was inconclusive.  He also testified that he did not believe that Dr. Schittek deviated from the applicable surgical standard of care by removing such a large piece of tissue in obtaining this second sample.  He explained that his opinion was based on the theory that no one but the surgeon performing the operation can truly say whether or not the sample was too large.  He opined that this decision has to be left to the surgeon's own personal judgment.

At the trial's conclusion, the jury found in Dr. Schittek's favor on both counts of Hernandez's complaint.  Hernandez appeals.

On appeal, Hernandez initially contends that the trial court erred in failing to direct a verdict in her favor on the civil battery portion of her complaint.  The trial court also denied her motion for judgment notwithstanding the jury's verdict on the battery count.  On appeal, the court reviews the matter to determine whether "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on the evidence could ever stand."  
Pedrick v. Peoria Eastern R.R. Co.
, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967).  Directed verdicts and judgments notwithstanding the verdict are improper where reasonable minds may differ as to inferences or conclusions to be drawn from facts presented, where the evidence demonstrates a substantial factual dispute, or where the assessment of witness credibility or the resolution of conflicting evidence is decisive to the outcome.  See 
Yedor v. Centre Properties, Inc.
, 173 Ill. App. 3d 132, 140, 527 N.E.2d 414, 419 (1988).  We review the trial court's decision on these motions 
de novo
 (see 
Gaffney v. City of Chicago
, 302 Ill. App. 3d 41, 48, 706 N.E.2d 914, 919 (1998)), applying the same standard used by the trial court (see 
Johnson v. National Super Markets, Inc.
, 257 Ill. App. 3d 1011, 1015, 630 N.E.2d 934, 937 (1994)).

A battery is an unauthorized touching of another's person.  See 
Cohen v. Smith
, 269 Ill. App. 3d 1087, 1090, 648 N.E.2d 329, 332 (1995), citing Restatement (Second) of Torts §13 (1965).  Illinois recognizes claims for medical battery.  See 
Gaskin v. Goldwasser
, 166 Ill. App. 3d 996, 1012, 520 N.E.2d 1085, 1094 (1988).  Recovery in a medical battery case is allowed when the patient establishes a complete lack of consent to medical procedures performed, when the treatment is against the patient's will, and/or when the treatment is "‘substantially at variance with the consent given.’" (Emphasis by 
Gaskin
 omitted.)  Gaskin, 166 Ill. App. 3d at 1012, 520 N.E.2d at 1094, quoting 
Woolley v. Henderson
, 418 A.2d 1123, 1133 (Me. 1980).  The scope of the patient's consent is critical to a determination of liability, in that the physician's privilege extends to acts substantially similar to those to which the patients consented.  See 
Mink v. University of Chicago
, 460 F. Supp. 713, 717 (N.D. Ill. 1978).

The scope of the conversation between patient and physician is not in dispute.  Despite the general "possible quadrantectomy" language of the surgical consent form, the parties are in complete agreement that the quadrantectomy was to be performed in the event of a malignancy and that there was no discussion as to what would happen if the frozen section was inconclusive.  The parties are therefore in complete agreement with respect to the consent given.  In the face of litigation, Dr. Schittek now argues that given the wording of the release, he had 
carte blanche 
authority to perform the quadrantectomy in any situation but a benign diagnosis.  He argues that his purpose in performing the quadrantectomy was to provide the pathologist with extra tissue.  The original amount of tissue Dr. Schittek provided the pathologist was very small, as is customary in a biopsy situation.  Dr. Schittek clearly believed that he was dealing with a cancerous condition, as his discussions with Hernandez's family and his medical reports reflect.  There simply was no need to remove approximately one-third of Hernandez's breast in order to provide another biopsy sample to the pathologist.  Dr. Schittek's techniques are actions reflective of his belief in the cancerous nature of this tissue.  Without the diagnosis of a malignancy, his actions exceeded the bounds of the consent Hernandez provided.

We conclude that Dr. Schittek's actions in performing the quadrantectomy in the absence of a malignancy diagnosis were "‘substantially at variance with the consent given’" (emphasis by 
Gaskin
 omitted) (
Gaskin
, 166 Ill. App. 3d at 1012, 520 N.E.2d at 1094, quoting 
Woolley
, 418 A.2d at 1133) and that the evidence, when viewed completely in Dr. Schittek's favor, so overwhelmingly favors Hernandez such that no contrary verdict based on that evidence could possibly stand (see 
Pedrick
, 37 Ill. 2d at 510, 229 N.E.2d at 513-14).  Accordingly, we find that the trial court erred in denying Hernandez's motion for directed verdict as to the battery count and her motion for judgment notwithstanding the verdict.

Hernandez next argues that the trial court erred in not granting her motion for directed verdict and/or her motion for judgment notwithstanding the verdict on the portion of her malpractice claim that alleged that Dr. Schittek performed unnecessary incisions.  We have thoroughly reviewed the record and conclude that the issue of the necessity of the incisions is a factual one that was properly sent to the jury for decision.  Each party presented expert testimony at trial, which did not resolve this factual issue.  The pathologist requested a second sample.  Considering all of the evidence in the light most favorable to Dr. Schittek, we are unable to conclude that the evidence relative to this issue of unnecessary incisions overwhelmingly favors Hernandez such that a directed verdict on this issue was warranted.

Hernandez also contends that the trial court committed reversible error by allowing Dr. Schittek to show the jury a diagram of advanced breast cancer for demonstrative purposes.  The particular diagram at issue demonstrated a cancer mass involving the majority of the breast tissue.  Dr. Schittek utilized the diagram as an illustration of a spiculated mass.  Hernandez's objection to the diagram is based upon the fact that Dr. Schittek made no showing that the cancer illustrated in the diagram was similar in size, location, characteristics, and/or appearance to that which was seen in her own breast.

The use of demonstrative evidence with a jury is favored because of its aid in testimonial comprehension.  See 
Cisarik v. Paulos Community Hospital
, 144 Ill. 2d 339, 341, 579 N.E.2d 873, 874 (1991).  The primary considerations in determining whether demonstrative evidence should be allowed are relevancy and fairness.  See 
Ogg v. City of Springfield
, 121 Ill. App. 3d 25, 38, 458 N.E.2d 1331, 1339-40 (1984).  The determination to allow demonstrative evidence is within the trial court's discretion.  See 
Ogg
, 121 Ill. App. 3d at 38, 458 N.E.2d at 1339-40.  If the demonstrative evidence is inaccurate or if it would tend to mislead or confuse the jury, allowing its admission would constitute an abuse of the trial court's discretion.  See 
Berry v. Owens Corning Fiberglas Corp.
, 282 Ill. App. 3d 199, 202, 668 N.E.2d 8, 11 (1996).

We have reviewed the trial transcript relative to Dr. Schittek's use of the breast diagram and conclude that the trial court did not abuse its discretion by allowing Dr. Schittek to use a diagram when testifying before the jury.  The trial court did not allow publication of the diagram to the jury and only allowed the diagram to be used on a limited basis during Dr. Schittek's testimony to assist the jury in understanding the meaning of terms used during his testimony.

Hernandez next contends that the trial court erred in failing to sanction Dr. Schittek for violating the 
Petrillo
 doctrine (
Petrillo v. Syntex Laboratories, Inc.
, 148 Ill. App. 3d 581, 499 N.E.2d 952 (1986)) by obtaining Hernandez's original mammogram films from Crossroads Community Hospital without her medical authorization or by subpoena.  Dr. Schittek does not dispute that he did not use an authorization or a subpoena to obtain the films.  He argues that his attorney verbally informed Hernandez's attorney the day before the films were to be used that he was going to be referring to the films during testimony.  He also contends that the films were covered by a previous production request.  Dr. Schittek also argues that there could be no 
Petrillo
 violation in this matter because of the content of the 
ex parte
 communication in issue.  The trial court acknowledged that the films were obtained improperly; it ordered their immediate return to the hospital pending a proper subpoena directed to the records custodian of the hospital's radiology department.  Hernandez declined this offer.  

Despite the arguments of Dr. Schittek, obtaining Hernandez's films constituted an 
ex parte 
contact
.  The proper methods to obtain the films were ignored.  An unspecific verbal communication between the attorneys is insufficient to authorize the means by which Dr. Schittek obtained the films.  However, in light of the type of communication involved, we conclude that the contact was 
de minimis
 in nature and "did not result in the disclosure of any private or confidential information regarding the patient."  
Mahan v. Louisville & Nashville R.R. Co.
, 203 Ill. App. 3d 748, 754, 561 N.E.2d 127, 132 (1990).  Accordingly, the trial court did not err in refusing to sanction Dr. Schittek by barring his use of the films.

Hernandez next contends that the trial court erred in refusing to construe the surgical consent form as a matter of law and by failing to instruct the jury as to the meaning and effect of the consent form.  She argues that the trial court's error on this issue was sufficiently prejudicial to warrant a new trial.  We do not need to address this issue, as the consent form relates to the battery claim, but we choose to address the issue because of its overlap with the malpractice claim and the manner in which the defense argued the consent form to the jury relative to the malpractice claim. 

Generally speaking, the construction of a written document presents a legal question.  See 
Russell v. Jim Russell Supply, Inc.
, 200 Ill. App. 3d 855, 867, 558 N.E.2d 115, 124 (1990).  Furthermore, the question of whether or not an ambiguity exists in a written document is generally considered to be a legal question.  See 
DuQuoin National Bank v. Vergennes Equipment, Inc.
, 234 Ill. App. 3d 998, 1003, 599 N.E.2d 1367, 1371 (1992).  Once the trial court determines that the document contains an ambiguity, the construction of the contract becomes a question of fact and extrinsic evidence is admissible with respect to the parties' intent.  See 
Farm Credit Bank of St. Louis v. Whitlock
, 144 Ill. 2d 440, 447, 581 N.E.2d 664, 667 (1991).  If this extrinsic evidence is in dispute, then the issue is one that must be submitted to the jury.  See 
Ridenhour v. Mollman Publishing Co.
, 66 Ill. App. 3d 1049, 1051, 383 N.E.2d 803, 804-05 (1978).  In keeping with this line of reasoning, if the extrinsic facts are uncontroverted, the trial court must determine the contract's meaning as a matter of law without jury submission.  See 
Ridenhour
, 66 Ill. App. 3d at 1051, 383 N.E.2d at 804.  

In this case, the trial court determined that the surgical consent form contained ambiguous terms, and the court allowed extrinsic evidence with respect to the parties' intent.  Prior to the submission of the case to the jury, the trial court concluded that the phrase "possible quadrantectomy" was ambiguous and that the phrase must be construed by the jury.

Given the parties' previous discussion relative to the presence or absence of a malignancy, the generic usage of the terms "possible quadrantectomy" in the surgical consent form was ambiguous.  About this, we agree with the trial court.  Therefore, extrinsic evidence on the issue was properly allowed at trial.  The extrinsic evidence on this issue was not in dispute.  Dr. Schittek and Hernandez both testified to the understanding that the quadrantectomy would be performed in the event of a malignancy.  They also testified that there had been no discussion about what Dr. Schittek would do in the event that the pathologist was unable to reach a diagnosis.  Dr. Schittek's discharge summary is consistent with this testimony.  Since the extrinsic evidence was not in dispute, the trial court should have ruled on the issue of the consent form's meaning as a matter of law. 

Furthermore, any arguments with respect to the balance of the surgical consent form, which authorized the performance of "any additional operations as may be therapeutically necessary based on findings during surgery," were improper in light of the evidence.  The only procedures performed were the excisional biopsy and the quadrantectomy.  The phrase "therapeutically necessary based on findings during surgery" qualifies the additional operations--not the quadrantectomy.  Because the consent form was presented to the jury for the determination of its meaning, Dr. Schittek's attorneys were free to argue that this "additional operations" phrase also gave Dr. Schittek the right to perform the quadrantectomy in the absence of a malignancy.  Even a simple reading of the consent form would not allow for that strained construction.  Accordingly, we find that the trial court erred in failing to construe and in allowing the jury to consider the consent form.  Furthermore, we conclude that such error was prejudicial, warranting a new trial with respect to Hernandez's malpractice claim.

For the foregoing reasons, the judgment of the circuit court of Jefferson County is hereby reversed, and the cause is remanded.

Reversed and remanded.

RARICK, P.J., and HOPKINS, J., concur.

NO. 5-97-0419

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

IRENE HERNANDEZ,            )  Appeal from the

                            )  Circuit Court of

     Plaintiff-Appellant,   )  Jefferson County.

                            )

v.                          )  No. 93-L-90

                            )

ANTON SCHITTEK, M.D.,       )  Honorable

                            )  James M. Wexstten,

     Defendant-Appellee.    )  Judge, presiding.

___________________________________________________________________________

Opinion Filed
: June 24, 1999

___________________________________________________________________________

Justices
: Honorable Clyde L. Kuehn, J.

Honorable Philip J. Rarick, P.J.

Honorable Terrence J. Hopkins, J.

Concur

___________________________________________________________________________

Attorneys
 Lackey & Lackey, P.C., 331 East Broadway, P. O. 

for
 Box 808, Centralia, IL 62801

Appellant
 

___________________________________________________________________________

Attorneys
 Paul R. Lynch, Craig & Craig, 115 N. 7
th
 Street, 

for
 P. O. Box 1545, Mt. Vernon, IL 62864

Appellee
 

___________________________________________________________________________