(No. 62789.—

## CHARLES P. OWENS, Appellee, v. RACHEL A. STOKOE, Ex'r, Appellant.

*Opinion filed November 20, 1986.—Rehearing denied January 30, 1987.*

Heyl, Royster, Voelker & Allen, of Peoria (David R. Sinn and Karen L. Kendall, of counsel), for appellant.

Strodel, Kingery & Durree, of Peoria (James R. Carter and Christopher P. Ryan, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

Charles P. Owens (Owens), the plaintiff, brought an action in the circuit court of Tazewell County for medical malpractice against Dr. James S. Stokoe (Stokoe), a dentist. Stokoe died prior to the trial and Rachel, his wife and the executrix of his estate, was substituted as the defendant.

A jury returned a general verdict for the plaintiff in the amount of $40,000 but found that 75% of the fault was attributable to the plaintiff, reducing the award to $10,000. After the trial court denied the plaintiff's motion for judgment notwithstanding the verdict on the issue of the plaintiff's contributory fault, or, in the alternative, for a new trial, the plaintiff appealed to the appellate court. That court reversed the portion of the judgment which found the plaintiff contributorily negligent and affirmed the judgment in the amount of $40,000 (140 Ill. App. 3d 355). We granted the defendant's petition for leave to appeal under our Rule 315(a) (103 Ill. 2d R. 315(a)).

Stokoe began treating Owens in October of 1976 when Owens came to his office complaining of a painful tooth. At that time, Owens had not had any dental care for three years. Stokoe, in a deposition, stated that during this visit he examined Owens' teeth and found that some of them were decayed almost to the gums and that he had

pyorrhea, a gum infection. This condition, Stokoe said, had been caused by neglect.

Between October of 1976 and May of 1978 Owens made approximately 10 visits to Stokoe's office. During this period, Stokoe extracted several teeth, filled others, and installed upper and lower plates. Although he treated Owens extensively during this period, he did not take X rays. Stokoe said that on at least two occasions he asked to take a full set of X rays but Owens refused. Owens denied at trial that Stokoe ever asked permission to take X rays. By September 1979, according to Stokoe's deposition, Owens' mouth was "full of infections and pyorrhea."

On November 25, 1980, Owens again visited Stokoe to have his teeth cleaned and examined, and for the first time, Stokoe took X rays. These revealed two lesions or abnormal growths on or in the lower left jaw bone. Stokoe stated that he also found, though this did not appear in the plaintiff's dental records, a bulging of the lingual plate, which plate was soft to the touch. (The lingual plate is the plate of bone between the tongue and the teeth.) This softness indicated to Stokoe that the bone had been destroyed.

Stokoe diagnosed these lesions as multiple cementomas, which he believed showed a potential for growth. He testified that without the benefit of prior X rays to use as a standard, however, he was unable to tell whether the lesions were growing, and if they were, whether they possibly would fracture Owens' jaw bone. Because of this uncertainty, Stokoe was of the opinion, he said, that it was necessary that the lesions be surgically removed.

On December 2, 1980, Stokoe showed and interpreted the X rays for the plaintiff and recommended surgery to remove the lesions. At this visit he said he explained to Owens that the surgery would involve a risk that the left inferior alveolar nerve, a sensory nerve serving the lower left portion of the face, might be affected. He told the

plaintiff that this could result in paraesthesia, or a lack of sensation, in that region of the jaw. A notation by Stokoe to this effect appeared in the plaintiff's dental records for that date. The plaintiff, however, testified that Stokoe did not advise him of the risk of paraesthesia prior to surgery or tell of the availability of an alternative form of treatment. Owens further testified that had he been advised of the risks of surgery that he would not have had the surgery performed. Stokoe performed the surgery in his office on December 4, 1980.

After surgery, Owens did not recover sensation at the part of his mouth and face served by the left inferior alveolar nerve. On January 28, 1982, Owens, at the recommendation of Stokoe, consulted Dr. W. James Fitzpatrick in an effort to remedy the loss of sensation, but Dr. Fitzpatrick was unable to relieve the condition. It was Dr. Fitzpatrick's opinion at trial that due to the passage of time, the plaintiff's chances of regaining sensation in the affected area were remote.

Count I of Owens' complaint alleged that Stokoe, prior to performing surgery, failed to inform him of the risks accompanying surgery and that an alternative method of treatment was available. Count II complained that the defendant was negligent in performing a surgical procedure that was contraindicated and in recommending an unnecessary surgery.

Expert witnesses testified on behalf of both Owens and Stokoe. The plaintiff's experts, Dr. Jack Jordan and Dr. W. James Fitzpatrick, gave opinions that the lesions should not have been surgically removed. Both witnesses said that the recommended treatment of the type of lesions observed in the X rays was periodic examination to determine whether the lesions were growing. Dr. Jordan stated that lesions of the type involved are self-limiting, do not seriously weaken the jaw and are harmless. It was his opinion that the lesions had matured and would not

have grown further. Dr. Theodore Century testified for the defense that, considering there was evidence of a history of infection in Owens' jaw, a bulging of the lingual plate, which had become soft to the touch, and no prior X rays to compare, he believed that surgery was a proper method of treatment. The expert witnesses agreed that paraesthesia is a recognized complication in the surgical removal of lesions in the lower jaw bone, and that paraesthesia can possibly occur even when the surgery was properly performed. The jury held in favor of the plaintiff on his complaint.

Over the plaintiff's objection, the trial court at the defendant's request instructed the jury to consider the contributory fault of the plaintiff. As stated, the jury returned a verdict in the amount of $40,000 but reduced its award by 75% because of what it found to have been the plaintiff's contributory negligence. The plaintiff's motion for judgment notwithstanding the verdict on the ground that on the trial record there was not any question of contributory negligence was denied by the trial court. The appellate court reversed on the ground that the trial court erred in not granting the plaintiff's motion for judgment notwithstanding the verdict. The appellate court said there was not sufficient evidence of contributory negligence causing the plaintiff's injury to allow that question to be presented to the jury. We granted the defendant's petition for leave to appeal under our Rule 315(a) (103 Ill. 2d R. 315(a)).

The defendant contends that conduct of the plaintiff contributed to the necessity of surgery and was evidence of his contributory negligence. Specifically the defendant points to (1) the plaintiff's failure to obtain a second professional opinion prior to undergoing surgery; (2) his poor oral-hygiene practices which allowed infections and promoted the development of the lesions; and (3) the plaintiff's claimed refusal to allow Stokoe to take X rays of his

teeth, which denied Stokoe information required for him to determine whether surgery was necessary.

We consider that the appellate court was correct in holding that the trial court erred in placing the question of comparative negligence before the jury. It is not every negligence of a plaintiff that will be considered under the doctrine of comparative negligence for the purpose of allocation of damages. (*Simpson v. General Motors Corp.* (1985), 108 Ill. 2d 146, 151.) It is only "that conduct which previously [*i.e.*, prior to adoption of comparative negligence] would have barred the plaintiff's claim [that] serves instead to reduce the recovery." (108 Ill. 2d 146, 151.) "The plaintiff's negligence will not bar recovery unless it is a 'proximate cause' of his injury. This means, of course, that it must be at least a cause in fact ***." (4 F. Harper, F. James & O. Gray, Torts sec. 22.10, at 342 (2d ed. 1986).) "Plaintiff will not, of course, be barred by contributory negligence *unless* his negligence was a proximate cause of the damage sued for." (Emphasis in original.) 4 F. Harper, F. James & O. Gray, Torts sec. 22.2, at 273 (2d ed. 1986).

Restatement (Second) of Torts, section 465(1) (1965), states:

> "The plaintiff's negligence is a legally contributing cause of his harm if, but only if, it is a substantial factor in bringing about his harm and there is no rule restricting his responsibility for it."

In order to reduce the award of damages the negligence of the plaintiff must have been a proximate cause of the injuries. Here, paraesthesia was proximately caused by damage to the left inferior alveolar nerve during surgery. Performance of the surgery caused the injury. Obviously it was not the failure of the plaintiff to obtain a second opinion, or his prior poor oral hygiene, or his refusal, if true, to permit X rays to be taken of his teeth that damaged the nerve. It is undisputed that the paraesthesia re-

sulted from the surgery, and it cannot be said that conduct of the plaintiff prevented Stokoe from properly performing the surgery.

This court in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, established the standard for the direction of verdicts, for the entry of judgments notwithstanding verdict and for determining whether negligence or contributory negligence is to be treated as a question of law. That standard is whether all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelming favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) Applying that standard, the appellate court properly held that the trial court erred in denying the plaintiff's motion for judgment notwithstanding the verdict. The record simply did not show evidence of contributing negligence that was the proximate cause of injury. See *Johnson v. Colley* (1986), 111 Ill. 2d 468, 474.

For the reasons given the judgment of the appellate court is affirmed.

*Judgment affirmed.*