STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee, v. SCOTT C. MENDENHALL, Defendant-Appellant.

Fourth District   No. 4—87—0385

Opinion filed December 23, 1987.

Nicholas J. Neiers and Martin D. Hoke, both of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellant.

James V. Mancuso, Jr., of Decatur, for appellee.

JUSTICE LUND delivered the opinion of the court:

On March 23, 1987, the circuit court of Macon County entered an order of declaratory judgment in favor of plaintiff State Farm Mutual Automobile Insurance Company, an insurance corporation (State Farm). Defendant Scott C. Mendenhall appeals.

Mendenhall was injured in a vehicle accident on August 11, 1984. He had uninsured motor vehicle coverage with State Farm, and the other vehicle in the accident was uninsured. Two questions proposed in State Farm's complaint are relevant to this appeal. These are: (1) whether evidence of defendant's negligence can be introduced to reduce the amount of the award when the uninsured motorist's conduct is alleged to have been wilful and wanton; and (2) whether defendant can recover punitive damages arising from the uninsured motorist's

conduct from plaintiff. The trial court answered "yes" to the first question and "no" to the second. We affirm.

Our supreme court adopted the concept of comparative negligence in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, doing away with the concept of contributory negligence. The court held that Illinois was adopting the pure form of comparative negligence.

In *Alvis*, the court analyzed the history of contributory negligence. It observed that three exceptions had been created to ameliorate the harshness of the application of the contributory negligence doctrine. (85 Ill. 2d at 10, 421 N.E.2d at 890.) These were the wilful and wanton exception, an exception involving violations of statutes, and the last clear chance exception. The court specifically abolished the vestiges of last clear chance. (85 Ill. 2d at 10, 421 N.E.2d at 890.) The court left the resolution of other collateral issues to future cases.

Mendenhall contends that comparative negligence should not apply to wilful and wanton allegations because wilful and wanton are only degrees different than intentional wrongdoings. He asserts wilful and wanton cases should be afforded the same noncomparative status as Illinois Structural Work Act (Act) (Ill. Rev. Stat. 1985, ch. 48, pars. 60 through 69) cases. See *Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 485 N.E.2d 4.

The argument is made that in both strict liability and products liability cases, the court has strayed from the application of pure comparative negligence. In *Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197, the court held that the defense of comparative fault is applicable to strict products liability cases. However, in discussing what conduct by a plaintiff could be used to reduce the amount of damages, the court stated:

"Following the Restatement, this court, in *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, adopted misuse and assumption of the risk as complete defenses to a strict products liability action. But, at the same time, it was said there that '[c]ontributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence.' (45 Ill. 2d 418, 423.) We adhere to this statement. We believe that a consumer's unobservant, inattentive, ignorant, or awkward failure to discover or guard against a defect should not be compared as a damage-reducing factor. As the court in *West v. Caterpillar Tractor Co.* (Fla. 1976), 336 So. 2d 80, 92, said: 'The consumer or user is entitled to

believe that the product will do the job for which it was built.'

However, the defenses of misuse and assumption of the risk will no longer bar recovery. Instead, such misconduct will be compared in the apportionment of damages. Specifically, we hold: Once defendant's liability is established, and where both the defective product and plaintiff's misconduct contribute to cause the damages, the comparative fault principle will operate to reduce plaintiff's recovery by that amount which the trier of fact finds him at fault." 97 Ill. 2d at 119, 454 N.E.2d at 203-04.

Mendenhall argues *Coney* stands for the proposition that in strict liability and products liability cases, the simple negligence of the plaintiff cannot be used as a damage-reducing factor. However, that conduct, which previously acted as a complete bar (*i.e.*, misuse and assumption of the risk), can now be used as a damage-reducing factor.

Mendenhall asserts this analysis has now been applied to simple negligence cases, as in *Owens v. Stokoe* (1986), 115 Ill. 2d 177, 503 N.E.2d 251. In *Stokoe*, plaintiff filed a medical malpractice claim against a dentist. The trial court allowed evidence of plaintiff's neglect to be introduced. The appellate court reversed, and the supreme court agreed with that ruling. The court stated:

"It is not every negligence of a plaintiff that will be considered under the doctrine of comparative negligence for the purpose of allocation of damages. (*Simpson v. General Motors Corp.* (1985), 108 Ill. 2d 146, 151.) It is only 'that conduct which previously [*i.e.*, prior to adoption of comparative negligence] would have barred the plaintiff's claim [that] serves instead to reduce the recovery.' " 115 Ill. 2d at 183, 503 N.E.2d at 254.

Mendenhall notes that under the contributory negligence doctrine, the negligence of plaintiff was not a bar to recovery when defendant's conduct was wilful, wanton, or reckless. (*Alvis*, 85 Ill. 2d at 10, 421 N.E.2d at 890.) Therefore, the defendant asserts that since the *Stokoe* court held that only conduct which acted as a bar previously can be asserted for comparative negligence purposes, it is clear that, in the present case, defendant's negligence cannot be asserted for comparative purposes against the uninsured motorist's wilful and wanton conduct.

The policy considerations which have limited the use of comparative negligence are different than those present in the wilful and wanton cases. As *Alvis* pointed out, the wilful and wanton exception

resulted from the need to alleviate the harsh results of the application of the contributory negligence rule. The wilful and wanton exception "was found to be cumbersome and difficult to apply. Historically, it is of limited importance." *Alvis*, 85 Ill. 2d at 10, 421 N.E.2d at 890.

A thin line exists between simple negligence and wilful and wanton negligence, or, in other words, wilful and wanton is only degrees different from simple negligence as it may be only degrees different from intentional wrongdoings. *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 35, 330 N.E.2d 509, 511.

The Structural Work Act, by its very nature, requires a form of strict liability. An important purpose of the Act is to encourage safe working conditions. In products liability cases, the economic loss created by the failure to discover the defect in the product or to guard against the possibility of its existence has, as a matter of public policy, been charged to the manufacturer. Those policies are strong reasons for not applying comparative negligence.

*Owens v. Stokoe* (1986), 115 Ill. 177, 183, 503 N.E.2d 251, 254, stands for the proposition:

> "In order to reduce the award of damages the negligence of the plaintiff must have been a proximate cause of the injuries."

The plaintiff's actions in *Stokoe* were found not to be a proximate cause of the injury.

■ We conclude the public policy issues which have resulted in limitation on use of comparative negligence are not present in wilful and wanton cases. Because of the possible small differences between negligence and wilful and wanton negligence, it appears the fact finder's ability to prorate the damages between plaintiff and defendant best serves justice and is most consistent with the reasons for comparative negligence enunciated in *Alvis*.

■ ■ The second question presented to the court is whether punitive damages are recoverable from one's own insurance carrier under an uninsured policy provision.

The relevant statutory language reads:

> "[N]o policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State *** unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Section 7—203 of The Illinois Vehicle Code for the protection

of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom ***." Ill. Rev. Stat. 1985, ch. 73, par. 755a.

The supreme court has consistently held that the purpose of uninsured motorist coverage is compensatory.

"Rather, we believe the reasonable purpose of the statutory uninsured motorist provisions is to assure that compensation will be available to policyholders, in the event of injury by an uninsured motorist, to at least the same extent compensation is available for injury by a motorist who is insured in compliance with the Financial Responsibility Law." (*Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71, 89, 269 N.E.2d 97, 106.)

(See also *Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 423, 401 N.E.2d 539, 542; *Severs v. Country Mutual Insurance Co.* (1982), 89 Ill. 2d 515, 519, 434 N.E.2d 290, 291.) The purposes of punitive damages are punishment and deterrence and "are awarded primarily to punish the offender and to discourage other offenses." (*Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 35, 330 N.E.2d 509, 511.) Mendenhall in oral argument suggested that the offending driver might be punished if State Farm was successful in a subrogation claim. This is wild-eye conjecture which lacks practical application. The purpose of the uninsured motorist coverage is to compensate for bodily injury, sickness, or disease, including death, resulting therefrom. It is not intended to punish the insured's insurance company for the wrongdoings of others.

We have considered all of Mendenhall's arguments on the punitive damage issue and find them without merit.

For the reasons stated above, we affirm the decision of the circuit court of Macon County.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.