HENRY L. BURKE, Plaintiff-Appellee, v. 12 ROTHSCHILD'S LIQUOR MART, INC., Defendant-Appellee (The City of Chicago, Defendant-Appellant).

First District (2nd Division)   No. 1—89—0237

Opinion filed January 15, 1991.

Kelly R. Welsh, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Jean Dobrer, Assistant Corporation Counsel, of counsel), for appellant.

Pavalon & Gifford, of Chicago (Eugene I. Pavalon, Gary K. Laatsch, and Richard L. Kumlin, of counsel), for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff was injured when he fell and struck his head while being forcibly ejected from a store owned by defendant 12 Rothschild's Liquor Mart, Inc. (Rothschild). After several Chicago police officers arrived, he was arrested and thrown into a paddy wagon. Plaintiff filed this action seeking recovery for his injuries, which rendered him a quadriplegic, and the jury returned a verdict against both defendants in the amount of $7,487,000. The city appeals, charging that three erroneous evidentiary rulings and two regarding damages were made by the trial court. We affirm.

The case was tried, beginning September 20, 1988, on counts I and V of the complaint; count I charged Rothschild with negligence, and count V charged the city with willful and wanton misconduct. Shortly before trial, Rothschild and the city both filed counterclaims against each other seeking contribution based on the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1987, ch. 70, par. 301 *et seq.*).

Plaintiff testified that his injuries occurred on November 20, 1977, when he became involved in an altercation with the manager of Rothschild's store, who attempted to eject him forcibly from the premises. As the manager was shoving plaintiff toward the door,

plaintiff's foot caught on a broken tile and he fell forward, striking his head on the door. Plaintiff testified that after lying on the floor several minutes, he lost consciousness. When he awoke a short time later, two Chicago police officers had arrived. They asked him to get up, and when plaintiff responded that he could not because he was hurt, he was picked up in a rough manner by the officers and thrown into a paddy wagon. He received equally rough treatment when he was removed from the vehicle and again lost consciousness after he was dropped to the ground. Much of this testimony was confirmed by several other occurrence witnesses. Plaintiff was caused serious and irreversible damage to his spinal cord.

The city presented the testimony of the two arresting officers which conflicted sharply with plaintiff's version of the facts. The senior officer testified that after he arrived on the scene, he spoke with the store manager, who had called the police. When he observed plaintiff lying on the floor he asked him several questions in order to obtain the information he needed to prepare his arrest report. Plaintiff said nothing at this time regarding his injuries, but told the police that they would have to carry him away if they were going to lock him up. The officer testified that plaintiff did not appear to be seriously injured, although he did not move while lying on the floor. Several minutes later, just as a paddy wagon was arriving, plaintiff told the officer he was hurt, and the officer relayed this information to the two paddy wagon officers. He heard them ask plaintiff to get up, but he could not hear plaintiff's response. The paddy wagon officers then lifted plaintiff off the ground, carried him into the wagon, and drove away. This testimony was essentially corroborated by the second arresting officer.

During the instructions conference, plaintiff moved the court to rule as a matter of law that his conduct did not contribute to any injuries caused by the city's misconduct and that the jury be instructed not to reduce the city's liability based on plaintiff's negligence. The judge granted the motion, and he later advised the jury of his ruling. The judge also refused a number of instructions proffered by the city directing that its damages be reduced by plaintiff's own negligence.

The first of three completed verdict forms returned by the jury in favor of plaintiff stated that his total damages against both defendants were $7,487,000. The second apportioned damages at 65% against Rothschild and 35% against the city. In the third verdict form, the jury determined that plaintiff was 32% negligent as compared to Rothschild's fault, and fixed a total of $3,309,254 damages recoverable against Rothschild. This figure was apparently arrived at by re-

ducing $7,487,000 first by 35%, the city's share of damages, and then by an additional 32%, the plaintiff's negligence. The court entered judgment on the verdicts.

In its post-trial motion, the city contended for the first time that defendants were not joint tortfeasors and that it was liable for only 35% of the total damages; in the alternative, it claimed the trial judge erred in ruling that the city's liability could not be reduced by plaintiff's negligence. Plaintiff asserted in oral argument on the motion that the jury was properly instructed to find joint and several liability, and that the apportionment figures related solely to defendants' counterclaims against each other for contribution. Plaintiff also filed his own post-trial motion asking the court to amend the verdict forms to reflect damages assessed against Rothschild as $5,091,160, the full $7,487,000 reduced by 32%, the percentage of plaintiff's negligence.[1]

The trial judge denied the city's motion and granted plaintiff's post-trial motion on November 28, 1988. Plaintiff's attorney was asked to draw up a judgment order reflecting the court's ruling. After additional oral argument on December 5, 1988, the judge approved plaintiff's draft order and entered a *nunc pro tunc* order effective October 4, 1988, which provided that judgment should be entered against both defendants in the amount of $7,487,000; that based on the defendants' contribution actions, damages should be apportioned 65% to Rothschild and 35% to the city; and that Rothschild's damages should be reduced by plaintiff's own negligence (32%), thus limiting recovery against Rothschild to $5,091,160. A second order was entered making corresponding changes in the jury verdict forms.

The city filed a notice of appeal on January 4, 1989, appealing from both orders. Rothschild has neither appealed nor appeared, nor has it filed a brief in this appeal.[2]

I

We first address the three evidentiary issues raised by the city. On September 19, 1988, just prior to the start of trial, the city filed a motion *in limine* to bar the testimony of Judith Sher on the ground that

---

[1]We note that the motion contained an error in arithmetic in that it arrives at a damages figure of $5,091,560. This error was subsequently discovered and corrected to $5,091,160.

[2]Henry Burke died on June 23, 1989, and his mother has been substituted as plaintiff and appointed special administrator pursuant to section 2—1008 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1008). For the sake of clarity, we will refer to Henry Burke as plaintiff.

she had not been disclosed by plaintiff as an expert witness, as required by Supreme Court Rule 220 (107 Ill. 2d R. 220). Counsel for the city stated that on September 13, 1988, plaintiff submitted Sher's name for the first time and advised defendants that she would testify as a fact witness regarding the ongoing costs of plaintiff's medical care and rehabilitation treatment; counsel further represented that Sher's deposition was taken some time after that date. The judge denied the city's motion on the ground that Sher was a fact witness, and that, therefore, Rule 220 did not apply. The judge also denied the city's motion for the continuance it sought in order to permit it to obtain additional information regarding the costs of plaintiff's continuing nursing care, which was the subject of Sher's testimony. Sher testified at trial on September 27, 1988.

■ Rule 220(a)(1) defines an expert as "a person who, because of education, training or experience, possesses knowledge of a specialized nature beyond that of the average person on a factual matter material to a claim or defense in pending litigation and who may be expected to render an opinion within his expertise at trial." (107 Ill. 2d R. 220(a)(1).) The rule does not reach a witness' fact testimony, which relates to things he saw, things he did, or, as appropriate, things he was told. (*In re Marriage of Hartian*, (1988), 172 Ill. App. 3d 440, 526 N.E.2d 1104, *appeal denied* (1988), 123 Ill. 2d 558, 535 N.E.2d 401; *Fischer v. G & S Builders* (1986), 147 Ill. App. 3d 168, 497 N.E.2d 1022, *appeal denied* (1987), 113 Ill. 2d 573, 505 N.E.2d 352.) The city contends Sher was clearly an expert within the meaning of Rule 220 and that allowing her testimony was reversible error.

■ Even if we were to agree that Sher was an expert within the meaning of Rule 220, reversal would not be required because the city has failed to demonstrate how the ruling prejudiced its case. (*Redmon v. Austin* (1989), 188 Ill. App. 3d 220, 543 N.E.2d 1351.) The city argues that there was substantial prejudice here because, as in *Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 511 N.E.2d 974, *appeal denied* (1987), 117 Ill. 2d 553, 517 N.E.2d 1095, it had no prior knowledge that Sher was to be called as a witness, and it did not have adequate time to investigate the testimony she gave in her pretrial deposition. These contentions are not supported by the record. Contrary to statements made by the attorney for the city, the record indicates that a discovery deposition of Judith Sher was taken on August 16, 1988, and that counsel for the city was present. Sher did not testify at trial until September 27, 1988, over one month later. The city thus had ample opportunity to investigate Sher's testimony and obtain appropriate rebuttal witnesses, and cannot successfully claim unfair surprise.

## II

■ The second disputed evidentiary ruling involves the denial of a motion *in limine* to bar plaintiff from introducing at trial a "day in the life" film or videotape of the plaintiff, on the ground that plaintiff did not follow the proper procedures in preparing the film. It was argued that the city was not given advance notice of the filming and was not present when it was being made and that it was not permitted to view material edited out of the final product used at trial.

The city's contention that it did not have an opportunity to view the entire raw footage taken was disputed by plaintiff's attorney at trial. When the attorney for the city was pressed by the judge to enunciate the nature of the city's objection, he conceded that the lack of notice and the denial of an opportunity to be present at the filming were the real problem. We address the city's argument on appeal within this context.

After the appellate briefs in this case were filed, this court decided *Cisarik v. Palos Community Hospital* (1989), 193 Ill. App. 3d 41, 549 N.E.2d 840, *appeal allowed* (1990), 113 Ill. 2d 558, 553 N.E.2d 394, which reversed a trial court determination relied upon by the city here. The trial judge had entered a pretrial order requiring that plaintiff give advance notice of the making of a day-in-the-life film and permit defendants to attend, that the film should be preserved in its entirety, and that the film should be made available to all defendants. Plaintiff's attorney was subsequently cited for contempt when she failed to comply with the terms of the order. In reversing on appeal, we noted that such a film will be admitted at trial only if it passes the "rigorous safeguards dealing with its authenticity and relevance" (193 Ill. App. 3d at 45, 549 N.E.2d at 842), and held that permitting defense counsel to be present at the filming would add nothing to these protections. The opinion cited with approval several earlier decisions holding that such films are admissible as long as their probative value outweighs any prejudice to the defendant and there are no demonstrated improprieties in the film's content or production. *Georgacopoulos v. University of Chicago Hospitals & Clinics* (1987), 152 Ill. App. 3d 596, 504 N.E.2d 830; *Barenbrugge v. Rich* (1986), 141 Ill. App. 3d 1046, 490 N.E.2d 1368; see also *Roberts v. Sisters of Saint Francis Health Services, Inc.* (1990), 198 Ill. App. 3d 891.

We reaffirm today our reasoning in *Cisarik* and hold that since the city has not come forward with any asserted impropriety in the film's content or production, admitting it into evidence was not im-

proper. Although the record does not establish how much time the city had to review the film before trial, this would not be enough to justify reversal of the trial judge's evidentiary ruling, which must be upheld absent a clear abuse of discretion. *Behrstock v. Ace Hose & Rubber Co.* (1986), 147 Ill. App. 3d 76, 496 N.E.2d 1024; *Missouri Portland Cement Co. v. United Cement, Lime, Gypsum & Allied Workers International Union, Division of Boilermakers, AFL-CIO, Local No. 438* (1986), 145 Ill. App. 3d 1023, 496 N.E.2d 489.

### III

The third evidentiary issue in dispute is a ruling by the trial judge barring the city from using prior deposition testimony to impeach a witness. Walter Small, who was called as an occurrence witness by the city, testified as follows on direct examination:

"Q. [Attorney for the city]: You said Henry [plaintiff]—when Henry was pushed, what happened to him?

A. He fell into the door.

Q. I'm sorry, his head hit the door?

A. That's right.

Q. And what happened to his neck? Did it spring back when he hit the door?

ATTORNEY FOR THE PLAINTIFF: Objection, your Honor. I'm going to object to this. This is just terribly improper again.

THE COURT: Objection sustained. The jury will disregard it.

Q. [Attorney for the city]: When his head hit the door, what happened to his neck?

A. I didn't see his neck. I seen when his head hit the door, he went down."

Counsel for the city, in argument held outside the presence of the jury, contended that he should have been permitted to use a prior inconsistent statement made by Small at his discovery deposition. The pertinent portion of the deposition testimony was read into the trial record:

"Q. [Attorney for the city]: His head hit—what part of his head hit ***?

A. I don't know exactly what part of his head.

Q. When you say he flew back—

A. I knew his head hit.

Q. You also say he flew back; is that right?

A. That's right.

Q. When you say he flew back, you indicated that your head was going back to your shoulders; is that right?

A. Uh-huh.

Q. Did it look like his head snapped back as he fell back?

A. Yeah. The way he fell, it looked like his neck was broken or something."

Counsel for the city asserted that impeachment was proper because it shed light on the critical issue of the extent of plaintiff's injuries before the police arrived.

In response, plaintiff's attorney pointed out that a short time later in the same discovery deposition, Small said he had made a mistake, and that he had not actually seen plaintiff's head snap back:

"Q. [Attorney for the city]: Now, are you saying that you made a mistake when you said his head went back after it hit the door?

A. I'm not entitled to a mistake? I'm trying to ***.

Q. I'm asking you now, did you make a mistake when you ***[?]

A. Yeah.

Q. So his head did not go back the way you had indicated that it had gone, is that right?

A. Okay.

Q. Is that what you're saying?

A. Right."

After hearing the offer of proof, the trial judge refused to permit the city to use the deposition testimony for the purpose of impeachment.

■ Impeachment of a witness by means of a prior inconsistent statement is permissible only where the statement has a reasonable tendency to discredit testimony on a material matter. (*Friedman v. Park District* (1986), 151 Ill. App. 3d 374, 386, 502 N.E.2d 826, 835; *People v. Davis* (1982), 106 Ill. App. 3d 260, 435 N.E.2d 838.) The inconsistency must be substantial and not merely trivial or collateral. (*Zelinski v. Security Lumber Co.* (1985), 133 Ill. App. 3d 927, 479 N.E.2d 1091.) Further, "[t]he determination of whether a witness' prior testimony is inconsistent with his present testimony is left to the sound discretion of the trial court." *People v. Flores* (1989), 128 Ill. 2d 66, 87-88, 538 N.E.2d 481, 489, *cert. denied* (1990), 497 U.S. ____, 111 L. Ed. 2d 799, 110 S. Ct. 3291; see also *Friedman*, 151 Ill. App. 3d at 386, 502 N.E.2d at 835.

■ Applying these principles, we hold that the city has failed to make a showing sufficient to establish an abuse of judicial discretion. The inconsistent statement which the city sought to use was corrected

by the witness later in the same discovery deposition when he stated that he had been mistaken in his earlier testimony. Small's testimony at trial was consistent with his corrected deposition statement. On these facts, we will not disturb the ruling of the trial court.

## IV

■ The city next raises two issues relating to damages, but before we address these contentions, it is necessary to vacate the contribution judgments entered below as void since void judgments can be vacated on a reviewing court's own initiative. (*Barger v. Slayden* (1952), 411 Ill. 237, 103 N.E.2d 645; *Concerned Boone Citizens, Inc. v. M.I.G. Investments, Inc.* (1986), 144 Ill. App. 3d 334, 339, 494 N.E.2d 180, 182.) In this case, both the city and Rothschild based their counterclaims for contribution on section 2 of the Contribution Among Joint Tortfeasors Act (the Act) (Ill. Rev. Stat. 1987, ch. 70, par. 302). While section 1 of the Act expressly states that the Act does not apply to causes of action accruing before March 1, 1978 (Ill. Rev. Stat. 1987, ch. 70, par. 301), the injuries complained of here occurred on November 20, 1977. The contribution judgments awarded thus exceeded the statutory authority of the court and are therefore void. *R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 489 N.E.2d 1360; *City of Chicago v. Fair Employment Practices Comm'n* (1976), 65 Ill. 2d 108, 357 N.E.2d 1154.

However, this conclusion does not invalidate the entire judgment entered in favor of plaintiff. "Where parts of a decree are clearly separable, only that part which is in excess of the authority granted to the court is void; and the remainder is valid." (*Chapman, Mazza, Aiello, Inc. v. Ace Lumber & Construction Co.* (1967), 83 Ill. App. 2d 320, 335, 227 N.E.2d 562, 570; see also 46 Am. Jur. 2d *Judgments* §693 (1969).) We believe the contribution judgments are indeed severable from plaintiff's judgment; consequently, we go on to address the city's assertions of error in light of this holding.

■ The city first argues that the trial court incorrectly entered a joint and several judgment on the verdict, that it was instead a successive tortfeasor, and that it is therefore liable for only 35% of plaintiff's total damages based on the jury's apportionment. However, we need not consider whether the city is a successive tortfeasor and must affirm the decision of the trial court, for it is well established that "a party waives his right to complain of an error where to do so is inconsistent with the position taken by the party in an earlier court proceeding." (*Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 543, 475 N.E.2d 817, 818.) Where no objection was made to a jury instruc-

tion which is claimed on appeal to be improper, and no alternative instruction was offered, the party is bound by its acquiescence in the instruction. *McKinney v. Coca Cola Bottling Co.* (1988), 170 Ill. App. 3d 362, 524 N.E.2d 657; *Young v. Cerniak* (1984), 126 Ill. App. 3d 952, 467 N.E.2d 1045; *Grunsten v. Malone* (1984), 125 Ill. App. 3d 1068, 466 N.E.2d 1209.

Here, it is evident from the record that the city offered no objection to the submission of the case to the jury on the basis of joint and several liability. The critical verdict form returned by the jury, which was submitted by plaintiff, stated: "We, the jury, find for the plaintiff and against the defendants, 12 ROTHCHILDS LIQUOR MART, INC., a corporation and CITY OF CHICAGO, a municipal corporation, and assess the plaintiff's damages as follows ***," followed by an itemization of damages and the total amount thereof. Although the city submitted alternate verdict forms which it contended were more comprehensible and better organized, the basis of its disagreement went to form rather than to substance. More important, the record is bereft of any rejected jury instructions, or any that were even proferred, which would have indicated that the city had attempted to submit the case on a successive tortfeasor theory; nor does the city make such a claim. Further, on two occasions during the instructions conference, plaintiff's attorney argued that both defendants were jointly and severally liable, and that the apportionment verdict forms proffered by defendants and ultimately submitted to the jury pertained solely to the defendants' counterclaims based on the Contribution Act. This position was not disputed by the city. In fact, it was not until argument on the post-trial motions that the city first claimed that the jury had not intended to impose joint and several liability.

We recognize that the jury was read the following instruction:

> "The instructions governing this case are as to each defendant, insofar as they are applicable to it, to the same effect as if it were the only defendant in this action and regardless of whether reference is made to defendant or defendants, either singular or plural form. You will decide each defendant's case separately as if each were a separate lawsuit."

However, this language, patterned after IPI Civil 2d No. 41.03 (Illinois Pattern Jury Instructions, Civil, No. 41.03 (2d ed. 1971)), is not sufficient to establish that the case was not submitted to the jury on a joint and several liability theory. The primary purpose of this instruction is merely to avoid needless repetition where the same issue and questions of law are applicable to two or more defendants. (*Wanner v. Keenan* (1974), 22 Ill. App. 3d 930, 317 N.E.2d 114.) It cannot be used

to remedy defendant's failure to object to plaintiff's verdict form requesting a finding of joint and several liability.

We are also constrained to point out that both parties have demonstrated little consistency and considerable confusion over the basis of liability in this case. Although the city's opening brief characterizes defendants as joint tortfeasors, it argues in its reply brief that plaintiff's reference in his response brief to defendants as consecutive tortfeasors is a concession requiring this court to overturn the joint and several liability verdict. We do not believe plaintiff's "concession" leads to the conclusion urged by the city, for, at oral argument, plaintiff represented his position to be that joint and several liability is proper because defendants' independent tortious acts caused a single indivisible injury, citing *Harris Trust & Savings Bank v. Ali* (1981), 100 Ill. App. 3d 1, 425 N.E.2d 1359, *appeal denied* (1982), 91 Ill. 2d 552. Whatever the merits of this contention may be, inasmuch as this case was submitted to the jury by all of the parties on a joint and several liability theory, as we have noted above, they are all bound by their prior acquiescence.

The City also maintains in the alternative that if joint and several liability is found to apply, it is entitled to a reduction in damages based on plaintiff's own negligence, a contention the city pleaded as an affirmative defense. During the instructions conference, the city cited *State Farm Mutual Automobile Insurance Co. v. Mendenhall* (1987), 164 Ill. App. 3d 58, 517 N.E.2d 341, for the proposition that, even if the city is found guilty of willful and wanton misconduct, it can still have its damages reduced by the plaintiff's simple negligence. It further asserted that the jury should be permitted to determine whether plaintiff's conduct in failing to inform the police of his condition and to request medical attention constituted a failure to exercise ordinary care. Plaintiff argued that he was entitled to a ruling that he could not be held to be guilty of contributory negligence with respect to the city as a matter of law, and that, in the alternative, his failure to act was not the proximate cause of his injuries. The judge passed the particular issue at that time.

Later in the discussion over jury instructions, plaintiff moved the court to strike the city's affirmative defense and to direct the jury that it was not permitted to reduce the city's liability by plaintiff's negligence, voicing the same arguments made previously. The city again argued that the question could not be decided as a matter of law. It further contended that a reduction based on plaintiff's negligence was permissible on the ground that any aggravation of plaintiff's injuries caused by the city would not have occurred absent plain-

tiff's initial misconduct in initiating the fracas. But the effect of plaintiff's charge of willful and wanton misconduct on the city's position was never squarely addressed in this latter part of the conference. The judge granted plaintiff's motion and orally informed the jury immediately after the instructions conference that he had ruled as a matter of law that plaintiff was not contributorily negligent with respect to the city.

On appeal, the city urges that since only one judgment was entered against defendants as joint tortfeasors, both are entitled to a reduction for plaintiff's own negligence. However, this argument completely ignores the critical fact that the city has been found guilty of willful and wanton misconduct. Although plaintiff does not specifically address this issue, and it does not appear to have been considered by the trial court, "we can sustain the decision of the circuit court on any grounds which are called for by the record regardless of whether the circuit court relied on the grounds and regardless of whether the circuit court's reasoning was correct." *Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 148; *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387; *Monarski v. Greb* (1950), 407 Ill. 281, 291.

Professors Prosser and Keeton, after citing the well-established rule that the ordinary contributory negligence of the plaintiff may not be "set over" against a defendant's conduct which "is actually intended to inflict harm upon the plaintiff," go on to state that

> "[t]he same is true of that aggravated form of negligence, approaching intent, which has been characterized variously as 'willful,' 'wanton,' or 'reckless,' as to which all courts have held that ordinary negligence on the part of the plaintiff will not bar recovery. Such conduct differs from negligence not only in degree but in kind, and in the social condemnation attached to it. *** It is perhaps more a form of comparative fault, where the court is refusing to set up the lesser fault against the greater." W. Keeton, *Prosser & Keeton on Torts* §65, at 462 (5th ed. 1984).

Prior to the adoption of comparative negligence in this State, numerous decisions held that the defense of contributory negligence was not available to a defendant guilty of willful and wanton misconduct. (See, *e.g., Spring v. Toledo, Peoria & Western R.R. Co.* (1977), 69 Ill. 2d 290, 371 N.E.2d 621; *Zank v. Chicago, Rock Island & Pacific R.R. Co.* (1959), 17 Ill. 2d 473, 161 N.E.2d 848.) The doctrine remained unaffected when comparative negligence was adopted by our supreme court in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886. As Pro-

fessors Polelle and Ottley have commented, "[t]he only issue decided by the Illinois supreme court in *Alvis* was that in actions based on negligence, the doctrine of contributory negligence should be abolished and replaced by the pure form of comparative negligence. 'Other collateral issues,' such as the application of the decision to willful and wanton conduct, *** were left to future cases." M. Polelle & B. Ottley *Illinois Tort Law* 653 (1985).

■ The rationale for continuing to regard a plaintiff's contributory negligence as no defense to an action based upon a defendant's willful and wanton misconduct, as we have in the past, is supported by a strong trend in recent decisions emphasizing the more culpable mental state of these defendants. Thus, willful and wanton misconduct has been described by our supreme court as "either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff." (*Adkins v. Sarah Bush Lincoln Health Center* (1989), 129 Ill. 2d 497, 518, 544 N.E.2d 733, 743.) It has similarly been defined as "that act intentionally done or that act taken, under the circumstances known, in reckless or conscious disregard of probable injurious consequences." (*Albers v. Community Consolidated No. 204 School* (1987), 155 Ill. App. 3d 1083, 1085, 508 N.E.2d 1252, 1254.) In contrast, negligence has been described in much more moderate terms as the "failure to do something which a reasonably careful person would do, or doing something which a reasonably careful person would not do under circumstances similar to those shown by the evidence." *Hames v. Catholic Bishop* (1968), 41 Ill. 2d 336, 339, 243 N.E.2d 203, 205; see also *Blackburn v. Johnson* (1989), 187 Ill. App. 3d 557, 561, 543 N.E.2d 583, 586, *appeal denied* (1989), 128 Ill. 2d 661, 548 N.E.2d 1066; *Burkee v. Mack Chicago Corp.* (1981), 102 Ill. App. 3d 688, 690, 430 N.E.2d 255, 256; Illinois Pattern Jury Instructions, Civil, No. 10.01 (3d ed. 1990).

■ These distinctions between ordinary negligence and willful and wanton misconduct lead us to conclude that the City should be barred from availing itself of plaintiff's negligence as a defense. The City does not contend on appeal that the jury's finding of willful and wanton misconduct is not supported by the evidence; indeed, it does not challenge the jury's finding of liability at all. The qualitative difference between the City's culpability and that of the plaintiff cannot be disregarded.

We note that the City correctly advised the trial judge that one recent decision of another district of this court has held that a defendant who is found to be guilty of willful and wanton misconduct is entitled to a reduction based on plaintiff's negligence. (*State Farm Mu-*

*tual Automobile Insurance Co. v. Mendenhall* (1987), 164 Ill. App. 3d 58, 517 N.E.2d 341.) The *Mendenhall* court stated, "[b]ecause of the possible small differences between negligence and wilful and wanton negligence, it appears the fact finder's ability to prorate the damages between plaintiff and defendant best serves justice and is most consistent with the reasons for comparative negligence." (164 Ill. App. 3d at 61, 517 N.E.2d at 344.) We respectfully disagree with our colleagues of the fourth district. Indeed, a recent Federal decision has criticized *Mendenhall* and opined that this "critical premise of the decision may be shaky" in light of the emerging trend in Illinois law. (*Wassell v. Adams* (7th Cir. 1989), 865 F.2d 849, 853-54.) As noted above, we believe the differences between the two theories of liability to be quite substantial indeed.

Finally, since our supreme court chose in *Alvis* to ignore a plaintiff's contributory negligence when it adopted a system of comparative fault in products liability cases based on strict liability, it would appear to be eminently reasonable to reach the same result in the case of willful and wanton conduct. See M. Polelle & B. Ottley, Illinois Tort Law 653 (1985).

For all of the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

HARTMAN and DiVITO, JJ., concur.